## UNITED STATES v. INDUSTRIAL ASS'N OF SAN FRANCISCO et al.

(District Court, N. D. California, Third Division. November 9, 1923.)

### No. 1044.

1. **Monopolies ⬉17(2)—Combination held unlawful as "conspiracy in restraint of interstate commerce."**

    Concerted action by defendants, a builders' exchange, industrial association, and others, connected as dealers in materials or otherwise with the building trades, to put into effect and maintain a so-called "American plan" in the local building industry, which contemplates employment of union and nonunion men in equal numbers under nonunion foremen, *held* a "conspiracy in restraint of interstate commerce," in violation of Sherman Act, § 1 (Comp. St. § 8820), where such concerted action is rendered effective by requiring every builder or contractor to obtain a permit to purchase specified materials, some of which are articles of interstate commerce, to procure which permit he must pledge himself to conduct his job on the American plan.

2. **Courts ⬉263—Federal court will grant injunction only to enforce federal law.**

    Where a conspiracy or combination is unlawful, as affecting interstate commerce, only in some of its activities, a federal court will enjoin only such activities.

---

In Equity. Suit by the United States against the Industrial Association of San Francisco and others. Decree for complainant.

John T. Williams, U. S. Atty., of San Francisco, Cal., A. T. Seymour, Asst. Atty. Gen., Henry A. Guiler and James Raleigh Kelly, Sp. Asst. Attys. Gen., and H. H. Atkinson, Sp. Asst. U. S. Atty., of Tonopah, Nev., for the United States.

Max J. Kuhl, of San Francisco, Cal., for certain defendants.

DOOLING, District Judge. This is an action in equity to restrain the defendants from further executing an alleged conspiracy in restraint of interstate and foreign commerce and to dissolve certain of the alleged conspirators for the more thorough attainment of the objects of the suit. The defendants named are about 40 in number, among them the Builders' Exchange and the Industrial Association of San Francisco, together with corporations, individuals, and partnerships belonging to each. The evidence was presented in the form of many voluminous affidavits; letters, and records, in addition to a transcript of the testimony taken in the state court upon a prosecution of the defendants for claimed violations of the Cartright Act (St. Cal., 1907, p. 984, amended by St. 1909, p. 593).

[1] From all this mass of evidence, much of it contradictory, certain facts stand clearly forth. The first is that the defendants are acting in concert for the purpose of putting into effect and maintaining what is by them designated the "American plan" in the building industry in San Francisco and some of its neighboring counties. The American plan contemplates the employment of union and nonunion men in equal proportions, with a nonunion foreman on each job. With the merits or demerits of this plan, as with the recurring conflicts between employers and labor unions, this court, acting within its jurisdiction, cannot lawfully be concerned. It is only when either side contravenes some federal law that the power of the court may be invoked, and then only to such extent as may be necessary to prevent such contravention, or to punish those involved in it. The purpose of the defendants, therefore, in so far as it may be sought or attained without running counter to the federal laws, cannot be interfered with by a federal court. But if, even in attaining an end with which the court cannot concern itself, such means are employed as the federal laws condemn, the court will, in the exercise of its lawful power, enjoin or dissolve as the necessities of the case may require.

And this brings us to the second fact that the evidence clearly shows, and that is that the so-called permit system is the principal means by which the concerted action of the defendants is rendered effective. Under this system no one can purchase the building materials covered thereby without obtaining a permit from the permit bureau of the Builders' Exchange, and no one can secure such permit who will not pledge himself to run his job on the American plan. Under the permit system were first placed cement, lime, plaster, ready-mixed mortar, rock, sand, and gravel, common brick, fire and face brick, terra cotta, and all clay products. Defendants disavow any intention to interfere with interstate commerce, and claim that these materials were selected

because they are produced within the state, and were carefully selected in order to avoid such interference. Later, however, by the permit bureau, other materials were placed under the permit system, several, if not all, of which were produced without the state. It is claimed that as to these the permit was never actually required, but the fact remains that they are on the proscribed list, pursuant to the declaration of the industrial relations committee of the Builders' Exchange, in whose hands the machinery for bringing into effect the American plan was placed, that "if necessary, and as soon as proper arrangements can be made, the permit system will be extended to all other materials used in the building trades."

A third outstanding fact is that plumbers' supplies, which are manufactured for the most part without the state, while not directly under the permit system, were just as effectively dealt with by the simple process of refusing a permit to purchase the materials that were under the system to any one who employed a "bad plumber"; that is to say, one who was not operating under the American plan. When it is stated that nearly all the dealers in building materials and plumbing supplies in San Francisco are members of the Industrial Association, the effectiveness of the permit system is at once apparent. Not only were the defendants, members of this association, bound by the system, but in some cases, at least, efforts were made, more or less successful, to prevent manufacturers and dealers without the state from shipping to any one who had not a permit, or could not procure one.

It is not necessary, and would serve no useful purpose, to recite the evidence showing the three outstanding facts above enumerated, or to follow refined arguments tending to show that interstate commerce has not in fact been interfered with. It is said, for instance, that no one has ever been by concerted action refused plumbers' supplies, except as to such supplies as had already reached the local dealer and been distributed among his wares, thus ceasing to be a subject of interstate commerce. Without passing upon the soundness of this contention, although such commerce does embrace the sale of goods after they reach their destination, and while they are in the original packages, it is sufficiently answered by the fact that on large jobs the supplies are shipped directly from outside the state to the contractor, although ordered through the local dealer.

We have, then, briefly stated, the following situation: (1) A concert of action to maintain the American plan. (2) The use of the permit system as a means to that end. (3) The placing under the permit system of articles not manufactured or produced within this state, but which come in interstate commerce from without the state. (4) The requirement that a contractor shall employ only "good plumbers" before he can obtain a permit, though plumbers' supplies are not directly under the permit system, and come for the most part from without the state, and are shipped directly to the contractor on large jobs. However little intended to interfere with interstate commerce, as claimed by the defendants, the result of their concerted action is such an interference therewith as under the Sherman Act (Comp. St. §§ 8820–8823, 8827–8830) cannot be tolerated. The court, however, has no desire to

go further in curbing their activities than the protection of such commerce requires.

[2] The defendants will not be dissolved, nor their general activities interfered with; but a decree will be entered, enjoining them from requiring any permit for the purchase of materials or supplies produced without the state, and coming here in interstate commerce, or for making, as a condition for the issuance of a permit, any regulation that will interfere with the free movement of plumbers' or other supplies produced without the state. They will also be enjoined from attempting to prevent or discourage any person without the state from shipping goods to any person whatever within the state.

If this decree be complied with in good faith by defendants, their other activities will not be disturbed; but to insure such compliance the court will reserve the right hereafter so to modify the decree to be entered as to include the dissolution of certain of the defendants, if such dissolution be necessary, and the plaintiff will be accorded the right upon a proper showing to apply for such relief at the foot of the decree.